**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**KENNETH G. HALL, JR.,**

       **Plaintiff,**                    **CIVIL ACTION NO. 8-CV-13330**

    **vs.**                                   **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION:**     This Court recommends that Defendant's Motion for Summary Judgment (docket no. 13) be DENIED, that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED, and that the case be remanded for further proceedings as set forth herein.

\*\*\*

**II.**      **PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of June 29, 2004, alleging that he had been disabled and unable to work since July 27, 2003 due to bilateral carpal tunnel syndrome and impairments of the right leg and foot. (TR 14, 55-57, 66, 464). The Social Security Administration denied Plaintiff's claim. (TR 42-46). A requested *de novo* hearing was held on June 6, 2007 before Administrative Law Judge (ALJ) Bennett S. Engelman who subsequently found that the claimant was not entitled to disability or Disability Insurance Benefits because he was not under a disability at any time from July 27, 2003 through the date of the ALJ's July 12, 2007 decision. (TR 20, 460). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 2-4). The

1

parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.  Plaintiff's Testimony and Reports

Plaintiff was forty-nine years old at the time of the administrative hearing and has a high school education. (TR 463). Plaintiff last worked for an automobile manufacturer and has past work experience as a machine operator. (TR 465). As a machine operator, Plaintiff had to lift crank shafts weighing approximately 28 pounds, load machines with rolls of sandpaper weighing one pound each and use hammers and gauges to take measurements. (TR 465-66). Plaintiff also worked in an area of the plant where he relieved people who were working with restrictions, so that they could go on breaks. (TR 467). That job involved standing, sitting and inspection tasks. (TR 467-68). Plaintiff reported that he was first disabled on July 28, 2003, when he was off work for five weeks. (TR 224). He then resumed employment, lasting approximately forty days. (TR 224). He last worked on October 31, 2003. (TR 224).

Plaintiff testified that the primary problem which prevents him from working is tingling and numbness throughout his body. (TR 471). He testified that if he sits for a short period of time his legs go numb. (TR 471). He testified that he has had this problem for five years. He also has tingling in his face. (TR 479). He testified that his feet and legs bother him and keep him awake unless he takes two Vicodin at night. (TR 472). He stated that doctors have told him this is caused by neuropathy. (TR 472).

He also complains of diabetes and two herniated discs in his neck. (TR 471). Plaintiff testified that he cannot turn his neck very well and he has a numb area in the left side of his back

near his shoulder blades, which he describes as a pinched nerve. (TR 474). Plaintiff takes three pills a day to treat his diabetes. (TR 471). Plaintiff testified that he now weighs 328 pounds and he is six feet two inches tall. (TR 472). Plaintiff testified that the doctor advised him to lose weight to control the diabetes and he has lost thirty-five pounds. (TR 472). When he was working his average weight was between 270 and 299 pounds. (TR 472).

     Plaintiff testified that as a result of bilateral carpal tunnel syndrome, he had surgery in approximately 1992 and returned to work for approximately another ten years. (TR 475). He testified that the carpal tunnel syndrome got progressively worse and he wore protective wrist bands and changed jobs often as recommended. (TR 475). Plaintiff had his gallbladder removed in the early 1990s. (TR 475). Plaintiff testified that he suffers from severe intermittent chest pain which happens five to ten times per month and lasts from one to three minutes, during which time he turns bright red and cannot breath. (TR 476). He testified that he either has to "get cool quickly" when this happens or someone has to slap him so he will draw a breath. (TR 476). Plaintiff also testified that he has to have all ten toes operated on and they are very painful if he walks far. (TR 477-78). Plaintiff testified that he has arthritis in both knees and for the previous couple of days he had to use a cane to walk, due to the weather. (TR 479).

     Plaintiff testified that he has lower back pain if he sits very long, walks very far or washes four or five dishes. (TR 478). Plaintiff testified that sitting for a half-hour is too long and if he sits on the commode to take a full stool, his legs go completely numb and he needs assistance to get off it. (TR 480). Plaintiff testified that he can comfortably stand for only three to five minutes. (TR 480). Plaintiff stated that walking fifty yards is too far. (TR 481). He can lift a gallon of milk. (TR 481). He can pour a glass of milk using two hands. (TR 481). Plaintiff testified that he cannot vacuum and he cannot dust because his hands and arms go numb if he raises them above his head.

(TR 481).  Plaintiff testified that driving makes his arms and hands worse and he could not use a computer because the sitting would bother him.  (TR 481-82).

Plaintiff testified that his Xanax makes him groggy and he does not like to drive when he takes it.  (TR 479).  His Vicodin makes him drowsy and upsets his stomach.  (TR 479).  Plaintiff lies down three times a day but does not get much sleep because he has to change positions from side to side.  (TR 479).  Plaintiff testified that he has taken a "water pill" since 2003 and it makes him have to use the restroom four to six times an hour for the first three hours after he takes the pill, which he calls "a major disturbance."  (TR 473, 479).

**B.     Medical and Record Evidence**

In reviewing the ALJ's decision, the Court must scrutinize the record in its entirety.  *See Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).  The Court has reviewed the record in full. Plaintiff began treating with Dale Hanson, M.D. in the mid-1980's.  (TR 73 ).  In July 2000 Plaintiff was referred by Dr. Hanson to Daryl G. Damron, D.C., for complaints of pain in the left lumbosacral/S1 region.  (TR 214).  Dr. Damron concluded that Plaintiff had "probable mechanical low back pain primarily involving left S1 joint."  (TR 214-15).  Dr. Hanson's medical records between May 17, 2001 and June 25, 2003 do not mention the diagnosis of carpal tunnel syndrome or complaints by Plaintiff of symptoms related to the same.  (TR 184-96, 313-16).  Plaintiff reported to the emergency room on April 13, 2003 with complaints of acute abdominal pain.  He was discharged on April 17, 2003 and Dr. Hanson diagnosed Plaintiff with acute ascending cholangitis, acute escherichia coli septicemia, remote choledochojejunostomy, remote cholecystectomy, exogenous obesity, anxiety disorder and osteoarthritis of the knees.  (TR 326).

On July 18, 2003 Dr. Hanson noted Plaintiff's history of morbid obesity and bilateral carpal tunnel syndrome repair from which Plaintiff "remains symptomatic."  (TR 312).  On July 18, 2003

Dr. Hanson noted Plaintiff's report of symptoms, including pain running up Plaintiff's left arm. (TR 312). The doctor noted that Plaintiff reported that he wears wrist braces at night, has trouble holding the steering wheel with his left arm and is "unable to do much in terms of using his hands, however, he has a job now that accommodates that." (TR 312). The doctor noted that Plaintiff was "concerned that if they move him to another line type assembly job he will not be able to do it." (TR 312). On July 28, 2003 the doctor noted that Plaintiff was "distraught over job up in the air," and noted that Plaintiff said "my hands won't let me work. The job I have is only pushing buttons but then they down size [and] they put me on a job where I use my hands I won't be able to do it." (TR 181, 311). The doctor noted Plaintiff's report that certain activities made his hands and wrists hurt and tingle and that he cannot ride a motorcycle or drive for more than a short trip. (TR 181, 311). Dr. Hanson noted that Plaintiff had positive Phalen's and positive Tinel's tests. (TR 181, 311). Dr. Hanson prescribed Vicodin, Neurontin, Prozac, Xanax and micro potassium and recommended that Plaintiff lose weight and continue with his medications. (TR 311).

On August 8, 2003 Dr. Hanson again noted positive Tinel's and positive Phalen's tests and noted that the "[b]ottom line is that if he returns to work using his hands [and] wrists not even surgery can help with paresthesias, weakness and pain." (TR 310). In October 2003 Dr. Hanson reported that Plaintiff "still can't use the wrists" secondary to pain. (TR 309). Dr. Hanson noted that Plaintiff "has decent grips but has pain." (TR 309). On October 28, 2003 the doctor noted that when Plaintiff returned to work, "the hands got worse," and that they "improved" when he was off work. (TR 308). In December 2003 Dr. Hanson referred to an EMG from Jeffrey R. Levin, M.D., and noted that Plaintiff still had pain in his forearms and paresthesias in the right hand. (TR 306). Notes from July 2004 show that Dr. Hanson was recommending Vicodin periodically for hand pain and recommended a 2000 calorie diet. (TR 300). On August 26, 2004 Dr. Hanson noted that

5

Plaintiff reported that his anxiety was driving him crazy, he could not sleep due to pain in his hands and arms and he could not undergo surgery until his workmens' compensation claim was decided. (TR 167). Dr. Hanson has completed numerous forms relating to insurance and Plaintiff's General Motors benefits in which he indicates that Plaintiff is disabled and unable to perform his work[1]. (TR 142-44, 216, 223, 233-34, 242-43, 248).

Objective testing in the record includes a May 2001 x-ray of the left wrist, which was negative and x-rays of the cervical spine, which showed mild spondylosis involving the mid cervical spine. (TR 207-13, 332). In 1991 Plaintiff underwent a electromyographic examination with W.J. Boike, M.D. who concluded that the study was abnormal and noted "electrodiagnostic evidence of bilateral median neuropathies at the wrists (i.e., carpal tunnel syndromes), without evidence of actual axonal degeneration," after which Plaintiff underwent bilateral carpal tunnel release surgery in the early 1990's. (TR 115, 200, 365, 436, 438). Following a September 17, 2003 electromyographic examination Dr. Boike noted that the new study was abnormal and showed "electrodiagnostic evidence of a mild median neuropathy at the right wrist (i.e., carpal tunnel syndrome), without evidence of actual axonal degeneration." (TR 115, 200, 365, 436). The doctor noted that there was "no electrodiagnostic evidence of a median neuropathy at the left wrist, or of a cervical radiculopathy affecting either upper extremity." (TR 436). Dr. Boike noted that the examination revealed "normal strength in both upper extremities, both proximally and distally." (TR 436).

On November 18, 2003 Dr. Levin performed an electromyogram examination and needle examination. (TR 199, 431). Dr. Levin reported "findings of denervation seen in the abductor

---

[1] The Court notes that Plaintiff has also submitted many of the medical records in triplicate, which has been distinctly unhelpful in performing an efficient review and summary of the record.

6

pollicis brevis bilaterally and the first dorsal interossei on the right." (TR 431). He also noted "findings of denervation seen in the deltoid and supraspinatus on the right." (TR 431). Dr. Levin diagnosed Plaintiff with bilateral carpal tunnel syndrome, right cubital tunnel syndrome and possible C4-5 radiculopathy. (TR 431). On October 20, 2004 Dr. Levin diagnosed bilateral carpal tunnel syndrome left greater than right, probable obstructive sleep apnea and right cubital tunnel syndrome by EMG. (TR 273). He noted that based on Plaintiff's history it appeared that the problems with his hands were work related and he would be given wrist splints (TR 273). He also noted that Plaintiff "may benefit from surgical decompression." (TR 273). On January 24, 2005 Dr. Levin noted that Plaintiff had an MRI on December 8, 2004 which revealed "spondylitic changes with disc herniation at C4-5 compressing the left C5 neural foramen" and spondylitic changes at C6. (TR 274-76). The doctor diagnosed Plaintiff with carpal tunnel syndrome, cervical radiculopathy, morbid obesity and obstructive sleep apnea and noted that "he will continue to stay out of work". (TR 276). Dr. Levin gave Plaintiff Motrin. (TR 276).

Thomas H. Beird, M.D., examined Plaintiff on November 17, 2003 for his complaints of carpal tunnel syndrome and noted that he was going to re-order an EMG to clarify why surgery was necessary. (TR 434). On December 2, 2003 Dr. Beird reviewed the EMG analysis and "identified the presence of Carpal Tunnel Syndrome." (TR 434). The doctor noted that Plaintiff's right side appeared to be giving him more trouble than the left side and that Plaintiff was interested in undergoing decompression surgery on the right side. (TR 434).

The transcript also includes records from General Motors related to Plaintiff's claims for disability in 2003. (TR 354-73). Nathan L. Gross, M.D., examined Plaintiff on July 23, 2004 related to Plaintiff's workers' compensation claim. (TR 448-59). Dr. Gross performed an electromyographic examination on August 4, 2004 and diagnosed Plaintiff with "borderline right

7

median mononeuropathy at the right wrist" and noted that he did "not detect left median mononeuropathy" and found "no electrophysiologic evidence of left cervical radiculopathy." (TR 457). Dr. Gross concluded that Plaintiff should have "prophylactic restrictions where he not expose (sic) hands or palms to sustained, impact or vibratory forces. He should avoid excessive twisting or turning of the wrists. He should not do forceful or sustained pinching or squeezing with the hands." (TR 458-59).

On July 23, 2004 Plaintiff underwent a psychiatric examination with Michael J. Freedman, M.D., as requested by General Motors. (TR 395). Dr. Freedman noted that Plaintiff reported using Wellbutrin, which keeps him "on an even keel." (TR 398). The doctor noted that Plaintiff also reported taking about three Vicodin a week if his hands are "unbearable." (TR 398). The doctor noted that Plaintiff also reported that he was on hydrochlorothiazide, one other blood pressure medication, Zantac and a medication to address the side effects from some of the medications, but Plaintiff could not recall the name of it. (TR 398). Dr. Freedman noted that Plaintiff did not appear to be "an anxious, agitated, somber, morose or withdrawn individual," but he noted "an underlying component of unhappiness or depression regarding his current circumstances and his hands." (TR 402). The doctor noted that Plaintiff's reports of anxiety or panic attacks three to four times per month appear to represent a type of generalized anxiety disorder. (TR 402). Dr. Freedman concluded that Plaintiff did not require any psychiatric restrictions and from a psychiatric standpoint, Plaintiff "could return to his previous job or work at any other job for which he might otherwise be qualified." (TR 403).

A reviewing medical consultant, Ph.D., (the name on the record is illegible) completed a Psychiatric Review Technique dated September 17, 2004 and concluded that Plaintiff has generalized anxiety-related disorder 12.06. (TR 378-390 ). The doctor concluded that Plaintiff has

8

mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and maintaining concentration, persistence or pace and no episodes of decompensation. (TR 388).

On October 12, 2004 Plaintiff underwent a state agency medical evaluation with Samiullah H. Sayyid, M.D. (TR 343-45). Dr. Sayyid reported that Plaintiff had no motor or sensory deficit and had normal coordination except that Plaintiff was unable to do "rapid alternating hand movements on the left and was unable to do heel-to-shin test adequately on the right." (TR 344). The doctor noted that the cervical spine was normal but there was "slight tenderness of the lumbosacral spine with diminished movements." (TR 344). All joints had normal full range of movement except the right knee which had reduced movement and was nontender. (TR 344). "[T]he grip in the left hand was reduced to 3/5 as compared to 5/5 in the right." (TR 344). The doctor diagnosed Plaintiff with morbid obesity, carpal tunnel syndrome more on the left than right with a history of surgery on both, history of right knee surgery, hypertension, depression, GERD and a right leg contusion in work place injury. (TR 345).

On October 31, 2004 Russell E. Holmes, M.D., M.P.H., completed a Physical Residual Functional Capacity Assessment. (TR 283-90). Dr. Holmes concluded that Plaintiff was limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, can stand and/or walk for six hours of an eight-hour workday, sit for six hours of an eight-hour workday and is unlimited in the ability to push and/or pull except as set for in the exertional limitations for lifting and carrying. (TR 284). He further found that Plaintiff is limited to occasionally climbing ramps, stairs, ladders, ropes and scaffolds, balancing, kneeling and crouching, and can frequently stoop and crawl. (TR 285). Plaintiff is limited in handling (gross manipulation) and feeling (fine manipulation and unlimited in reaching in all directions (including overhead) and feeling (skin receptors). (TR 286). Plaintiff should avoid concentrated exposure to vibration and hazards including machinery

9

and heights. (TR 287).

On November 27, 2006 K. Baddam, M.D., diagnosed Plaintiff with a left thigh abscess and new onset diabetes. (TR 120). The doctor noted that Plaintiff "needs to seriously work on diet and exercise," and sent Plaintiff to diabetic teaching classes. (TR 120).

**C.     Vocational Expert Testimony**

The Vocational Expert (VE) testified at the hearing that Plaintiff's past work at the auto manufacturer was semi-skilled and medium exertion with no transferrable skills. (TR 483). The ALJ asked the VE to consider an individual with a high school degree, past work history as described, limited to light work with limited walking, requiring a sit/stand option and only occasional use of the hands up to one-third of the workday. (TR 484). The VE testified that such an individual would be able to perform light, unskilled work which would include information clerk (1,700 hundred jobs in the Lower Peninsula of Michigan), visual inspector (reduced from 2,200 to 1,500 jobs) and inspector (10,000 reduced to 3,500). (TR 484-85). The VE testified that the sit/stand option allows an individual to sit for up to three to four minutes, but that a need to sit for ten or fifteen minutes at a time, every hour, would not be classified as a light job. (TR 485).

The VE testified that sedentary jobs with only occasional use of hands and allowing a change of position from sitting to standing would include information clerk (sedentary, unskilled at 1,200 jobs) and I.D. clerk (use of hands occasionally to mark something down at 1,110 jobs). (TR 486). The ALJ asked whether an individual who was tired or fatigued as a side effect from medication and off task ten minutes of every hour would be able to maintain competitive employment. (TR 487). The VE testified that if the individual were off task for ten minutes straight, they would not be able to maintain competitive employment. (TR 487). If the individual were off task for two or three minutes at a time, it would not be a problem. (TR 487). The VE testified that an individual

10

who had to be away from the work station four or five times per hour, because of medication taken for fluid reduction, would not be able to maintain employment.  (TR 487).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since July 27, 2003, met the insured status requirements through December 31, 2007 and suffered from degenerative disc disease, diabetes, carpal/cubital tunnel syndrome and obesity, all severe impairments, he did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments.  (TR 15).  The ALJ found that Plaintiff was not entirely credible, he was unable to perform his past work and he retained the ability to perform a limited range of light work.  (TR 16).  The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (TR 19).

## V.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Analysis**

*1.     Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f) (2009). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding

"supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

## 2. *Whether The ALJ Gave Appropriate Weight To Treating Medical Physicians Dr. Badden's and Dr. Hanson's Opinions*

Plaintiff's sole argument on appeal is that the weight given to the treating physicians' opinions was error. (Docket no. 8). Plaintiff asks the Court to reverse the ALJ's decision and award him benefits, or, in the alternative, remand the claim for further proceedings. (Docket no. 12). Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of treating physicians Dr. Baddam and Dr. Hanson. The parties do not contest whether these doctor are treating physicians. The ALJ found that Plaintiff has the RFC to perform "a limited range of light work activity that does not require more than occasional use of the hands" and allows "the ability to alternate between sitting and standing positions at will." (TR 16). Dr. Baddam and Dr. Hanson opined that Plaintiff is completely disabled and unable to work or return to his prior work. (TR 16). Dr. Baddam opined that Plaintiff has more severe restrictions than those included in the ALJ's RFC.

As an initial matter, dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Commissioner of Social Security*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); see also 20 C.F.R. § 404.1527(e). The ALJ did not err in failing to adopt the physicians' conclusory opinions that Plaintiff is disabled.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30.

If an ALJ rejects a treating physician's opinion, he must "give good reasons" for doing so in his written opinion. *See* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p and 96-2p. Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Social Sec'ty*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

**a.     Whether The ALJ Gave Proper Weight To Dr. Hanson's Opinions**

Plaintiff argues that Dr. Hanson was the treating physician which the ALJ referenced in his opinion to show that Plaintiff's "medical condition overall has remained essentially stable over the last several years." (TR 18, Docket no. 9 at 9). Plaintiff points out that Dr. Hanson opined several times that Plaintiff remains disabled and will "never" return to work. On November 11, 2003 Dale A. Hanson, M.D., completed a form associated with Plaintiff's claim for GM Benefits. (TR 248-49). Dr. Hanson noted that Plaintiff is diagnosed with carpal tunnel syndrome, thoracic outlet synonome, hypertension and obesity. (TR 248). The doctor noted that the objective findings included a positive EMG. (TR 248). The doctor concluded that Plaintiff has been totally disabled since

14

November 1, 2003 through "now" and Plaintiff had not recovered sufficiently to return to work. (TR 248). The doctor indicated that work may be resumed "never." (TR 248).

Dr. Hanson completed another form on December 9, 2003 in which he indicated that Plaintiff will "never" return to work. (TR 233). He also noted that carpal tunnel release surgery was being considered for January 13, 2004. (TR 233). On a July 26, 2004 form Dr. Hanson noted that Plaintiff is diagnosed with bilateral carpal tunnel syndrome, right cubital tunnel syndrome and possible C4-C5 radiculopathy. (TR 223). Dr. Hanson indicated that Plaintiff is not able to engage in any occupation or employment for wage or profit and will "never" be expected to resume gainful employment. (TR 223). The doctor noted that Plaintiff cannot ride a bike or drive more than a few blocks due to his pain and paresthesias. (TR 223).

Although the ALJ is not is not required to accept Dr. Hanson's conclusory opinion on the ultimate issue of disability, it appears that the ALJ may have relied on Dr. Hanson's records to determine that Plaintiff has "remained essentially stable" and as a reason for discounting Dr. Baddam's opinion, as set forth below. (TR 18). Although Dr. Hanson treated Plaintiff regularly for several years, Dr. Hanson's name is not referenced within the ALJ's decision in connection with any medical record, so the Court cannot determine whether the records were considered and what weight was given to them. "While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. Most importantly he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The Court notes that the ALJ cites to the records contained in "Section F," without further description. "Section F" in the transcript before the Court contains more than 350 pages, described in the index as "Medical Records Admitted As Evidence In Connection With Request For Hearing Filed 11/30/04." (TR 1, 98-459). Section F contains all of the medical records, including

Dr. Hanson's. From this broad reference, the Court cannot whether Dr. Hanson's opinions were considered and there is no other indication that they were. Dr. Hanson's records are also relevant because it appears that the ALJ may have relied on some or all of these treatment records to discount Dr. Baddam's opinion.

**b.      Whether The ALJ Gave Proper Weight to Dr Baddam's Opinions**

Plaintiff argues that Dr. Baddam opined in November 2005 that Plaintiff "is unable to return to any type of work activity" and in April 2007 Dr. Baddam noted that Plaintiff remains disabled. (TR 18, 139-40, 103). The first opinion on which Plaintiff relies is a form Statement of Claim for Extended Disability Benefits for the General Motors Life and Disability Benefits Program. (TR 139-40). The form is dated November 1, 2005 next to Plaintiff's own signature, however, it is undated and unsigned on the page which bears the physician Kavitha Baddam, M.D.'s, printed name. (TR 140). On the check box form it is indicated that Plaintiff's prognosis is "unimproved." In response to "[i]s your patient now totally disabled?" the answer "yes" is indicated for any occupation. (TR 140). "Never" is selected in response to the question about when the patient will be able to resume any work. (TR 140). And "No" is indicated in response to whether the patient is able to perform restricted work and whether the patient is suitable for a rehabilitation program. (TR 140). Plaintiff's symptoms and objective findings are reported as bilateral carpal tunnel syndrome and hand and wrist pain. (TR 140). An accompanying letter shows that the form was completed because GM required "updated medical information" regarding Plaintiff's disability to determine if he qualified for further benefits. (TR 141).

The April 2, 2007 document is a Medical Source Statement (Physical) completed by Dr. Baddam. (TR 103). The doctor noted Plaintiff's diagnoses of bilateral carpal tunnel syndrome, chronic low back pain and neck pain. (TR 103). Dr. Baddam indicated that Plaintiff can lift, carry

16

and/or upward pull less than ten pounds occasionally and less than ten pounds frequently, stand and/or walk with normal breaks less than two hours of an eight-hour day, sit continuously with normal breaks for less than six hours of an eight-hour day and is severely limited in all extremities in ability to push and/or pull including the operation of hand and foot controls. (TR 103). Dr. Baddam noted that Plaintiff cannot lift, perform repetitive work or twist. (TR 103). The doctor noted that the limitations would likely disrupt a regular job schedule with low physical demands "frequently- 90% or more." (TR 103). These limitations are more restrictive than the ALJ's RFC for a limited range of light work.

Unlike Dr. Hanson, above, the ALJ specifically discussed Dr. Baddam's opinions and record evidence. The ALJ discussed the weight given to Dr. Baddam's opinions, and stated that "the objective clinical evidence in this matter does not support the findings provided by Dr. Baddam in the reports discussed above." (TR 18). The ALJ did not cite specific objective medical findings in connection with this statement and while an initial EMG in September 2003 showed "mild" median neuropathy in the right wrist, a November 2003 EMG showed evidence of carpal tunnel syndrome after which Dr. Levin diagnosed bilateral carpal tunnel syndrome and right cubital tunnel syndrome. (TR 273, 431). The Court has cited extensively to the medical evidence and notes that while the EMGs and other objective evidence, including the physicians' and examiners opinions, may well support findings of lesser or greater restrictions and severity than those in Dr. Baddam's (or Dr. Hanson's) opinions, it is not the function of this Court to weigh the evidence. *See Brainard*, 889 F.2d at 681; *Garner*, 745 F.2d at 387.

The ALJ also stated that "the claimant's medical condition overall has remained essentially stable over the last several years. Therefore, the undersigned is unable to accord significant weight to Dr. Baddam's opinion as to the claimant's functional limitations and the claimant's ability to

perform work activity." (TR 18). As discussed above, to the extent that the ALJ is referencing and relying on Dr. Hanson's records to show that Plaintiff's condition has remained stable, the ALJ has failed to reference Dr. Hanson's treatment notes or explain the weight given to them, including Dr. Hanson's conclusion that Plaintiff suffers symptoms of carpal tunnel syndrome and associated symptoms.

The Court notes that the ALJ also pointed out that Plaintiff's symptoms and complaints related to carpal tunnel syndrome and degenerative disc disease and pain in the neck, back and upper extremities has been treated with conservative measures. (TR 16-17). Substantial evidence in the record supports this finding. Both Plaintiff's testimony and the medical records show that Plaintiff takes Vicodin on a PRN basis for pain. Plaintiff reported to one examiner that he takes Vicodin about three times per week to relieve pain so he can sleep. (TR 398). The record shows no other therapies or more intensive treatment to manage Plaintiff pain symptoms. While this finding is supported by substantial evidence, it is by itself insufficient to explain the weight accorded Dr. Baddam's and Dr. Hanson's opinions.

The Court should remand this case so the ALJ may evaluate Dr. Baddam's and Dr. Hanson's opinions and evidence in full. The ALJ should give specific reasons for the weight assigned to this evidence and specific citations to the evidence of record on which he relies. 20 C.F.R. § 404.1527. To the extent that this results in a new RFC, the ALJ must make a new step four and, if necessary, step five determination.

## **VI.** **CONCLUSION**

Defendant's Motion for Summary Judgment (docket no. 13) should be DENIED, that of Plaintiff (docket no. 8) DENIED and the instant claim remanded for further proceedings as set forth herein.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 13, 2009          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 13, 2009           s/ Lisa C. Bartlett
                                 Courtroom Deputy